UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
DOMINGO C., JR.,

                Plaintiff,         <u>REPORT & RECOMMENDATION</u>
                                      1:24-cv-04782-JLR-GRJ

      v.

ACTING COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

      In July of 2021, Plaintiff Domingo C., Jr.[1] applied for Supplemental

Security Income Benefits and Disability Insurance Benefits under the Social

Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by the Law Office of Charles E. Binder and Harry J.

Binder, LLP, Charles E. Binder, Esq., of counsel, commenced this action

seeking judicial review of the Commissioner's denial of benefits under 42

U.S.C. §§ 405 (g) and 1383 (c)(3).

      This case was referred to the undersigned for a report and

recommendation on April 21, 2025.  Presently pending are the parties'

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

competing requests for Judgment on the Pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. For the following reasons, it is recommended that Plaintiff's request should be granted, the Commissioner's request should be denied, and this matter should be remanded for further proceedings.

## I. BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on July 2, 2021, alleging disability beginning July 1, 2017. (T at 68-69, 254-89).[2]  Plaintiff's applications were denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on May 23, 2023, before ALJ Raymond Prybylski.  (T at 31-58).  Plaintiff appeared with an attorney and testified. (T at 36-50). The ALJ also received testimony from Ruth Baruch, a vocational expert. (T at 50-55).

### B.    ALJ's Decision

On July 7, 2023, the ALJ issued a decision denying the applications for benefits. (T at 101-118).  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2021 (the

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 8.

date last insured) and had not engaged in substantial gainful activity since July 1, 2017 (the alleged onset date). (T at 106).

The ALJ concluded that Plaintiff's depressive and anxiety disorders were severe impairments as defined under the Act. (T at 106). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 107).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: he is limited to simple tasks and can tolerate no more than occasional decision-making. (T at 108). The ALJ also found Plaintiff limited to only occasional interaction with co-workers and supervisors, with no contact with the general public. (T at 108).

The ALJ concluded that Plaintiff had no past relevant work. (T at 111). Considering Plaintiff's age (50 on the alleged onset date), education (at least high school), work experience (no past relevant work), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 111).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between July 1, 2017 (the alleged onset date) and July 7, 2023 (the date of the ALJ's decision). (T at 112-13).

On February 26, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.    Procedural History

Plaintiff commenced this action by filing a Complaint on June 24, 2024. (Docket No. 1).  Plaintiff filed a brief requesting judgment on the pleadings on September 25, 2024. (Docket No. 9).  On November 19, 2024, the Commissioner interposed a brief requesting judgment on the pleadings. (Docket No. 13).  Plaintiff filed a reply brief on November 27, 2024. (Docket No. 14).  The matter was assigned to the undersigned for a Report and Recommendation on April 21, 2025.

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.     *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III. DISCUSSION

Plaintiff raises two primary arguments in support of his challenge to the ALJ's decision.  First, he contends that the ALJ's consideration of the medical opinion evidence was flawed, which undermines the RFC determination.  Second, Plaintiff challenges the ALJ's assessment of his subjective complaints.  The Court will address each argument in turn.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social

7

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013

WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§

404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated

new regulations regarding the consideration of medical opinion evidence.

The revised regulations apply to claims filed on or after March 27, 2017.

*See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that

date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical

opinions," but rather considers all medical opinions and "evaluate[s] their

persuasiveness" based on supportability, consistency, relationship with the

claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a),

(b)(2).   The ALJ is required to "articulate how [he or she] considered the

medical opinions" and state "how persuasive" he or she finds each opinion,

with a specific explanation provided as to the consistency and

supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent

with evidence from other medical sources and non-medical sources." *Dany

Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. §

416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, the record contains assessments from two treating providers and two non-examining State Agency review physicians.

### 1. *Treating Social Worker Michele Feldman*

Michele Feldman, LCSW, provided a letter dated February 17, 2021, explaining that she had been Plaintiff's psychotherapist since July of 2020, treating him weekly. (T at 472). She noted diagnoses of dysthymic disorder, depression, and anxiety, with symptoms including racing thoughts, difficulty concentrating, and auditory hallucinations. (T at 472). Ms. Felman opined that Plaintiff had marked difficulties in social functioning and has a "persistent impairment that restricts activities of daily living." (T at

472).  Ms. Feldman reiterated her assessment in follow-up letters dated

September 1, 2021, and April 22, 2022. (T at 597, 796).

      *2. Treating Psychiatric Nurse Practitioner Danielle Gustama*

On March 1, 2021, Danielle Gustama, a psychiatric nurse

practitioner, provided a letter in which she described treating Plaintiff

monthly since July of 2020.  She noted diagnoses of dysthymic disorder,

depression, and anxiety, characterized by significant anxiety, social

isolation, auditory hallucinations, and difficulty concentrating. (T at 471).

In May of 2021, Ms. Gustama completed a mental impairment

questionnaire.  She opined that Plaintiff had "good" days and "bad" days

and that his symptoms of anxiety would be exacerbated if he was exposed

to work or work-like settings. (T at 475).

Ms. Gustama assessed marked limitation with respect to Plaintiff's

ability to make simple work-related decisions, work in coordination with

others without being distracted by them, engage in any social interaction,

and travel to unfamiliar places or use public transportation. (T at 477).  She

opined that he had moderate-to-marked impairment regarding maintaining

attention and concentration for extended periods, performing activities

within a schedule and consistently being punctual, completing a workday

without interruptions from psychological symptoms, and responding

appropriately to workplace changes. (T at 477). Ms. Gustama concluded that Plaintiff would be absent from work more than three times per month due to his impairments and/or treatment. (T at 478).

In April of 2022, Ms. Gustama provided a letter repeating her previous findings. (T at 795).

### 3. State Agency Review Consultants

In August of 2021, Dr. T. Inman, a non-examining State Agency consultant, reviewed the evidence and assessed no limitations in Plaintiff's ability to understand, remember, or apply information, and mild limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (T at 63-64).

In February of 2022, Dr. S. Juriga, Ph.D., another non-examining State Agency consultant, opined that Plaintiff had no limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. (T at 78-79). He assessed moderate limitation in Plaintiff's capacity to concentrate, persist, or maintain pace. (T at 79).

Dr. Juriga concluded that Plaintiff retained the ability to perform entry-level, unskilled work in a low-contact setting, but found that there was

insufficient evidence to assess Plaintiff's disability insurance benefits claim for the period between July 1, 2017, and June 30, 2021. (T at 84-85, 97).

### 4. ALJ's Analysis

The ALJ concluded that Plaintiff had mild impairment as to understanding, remembering, or applying information; moderate limitation in interacting with others; moderate impairment with respect to concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing himself. (T at 107-108).

As noted above, the ALJ found that Plaintiff retained the RFC to perform work involving simple tasks, occasional decision-making, occasional interaction with co-workers and supervisors, and no contact with the public. (T at 108).

In reaching this conclusion, the ALJ found the assessments of Ms. Feldman and Ms. Gustama unpersuasive. (T at 110-111).

For the following reasons, the Court concludes that the ALJ's consideration of the medical opinion evidence was flawed and cannot be sustained.

First, the ALJ gave insufficient consideration to the fact that Ms. Feldman and Ms. Gustama were treating providers, with the opportunity to

interact with and observe Plaintiff on a weekly and monthly basis, respectively, over an extended period.

The Second Circuit has long recognized the particular importance of treating source opinions when reviewing claims involving mental impairments. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the treating physician rule is no longer in effect, this important principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the new standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8-9 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v)); *see also Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at

*9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom.*

*Cuevas v. Comm'r of Soc. Sec.*, No. 20CV0502KMWKHP, 2022 WL

717612 (S.D.N.Y. Mar. 10, 2022), at *25-26 (S.D.N.Y. Jan. 29, 2021)("A

survey of … cases … show[s] that while the treating physician's rule was

modified, the essence of the rule remains the same, and the factors to be

considered in weighing the various medical opinions in a given claimant's

medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight

to treating source opinions—no matter how well supported and consistent

with the record they may be—the regulations still recognize the

'foundational nature' of the observations of treating sources, and

'consistency with those observations is a factor in determining the value of

any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec.*, No.

2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting

*Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

Second, the ALJ erred by discounting the treating source opinions as

inconsistent with the record without accounting for the significance of their

consistency with each other.

This means that the ALJ was obliged to account for the fact that,

notwithstanding his lay interpretation of the treatment record, it was

significant that both treating mental health providers, who had the opportunity to interact with and observe Plaintiff over an extended period, shared the belief that Plaintiff would experience debilitating symptoms if exposed to the mental demands of basic work activity. *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *7 (D. Vt. July 14, 2020)("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

Third, the ALJ overrated the relevance of Plaintiff's ability to maintain appropriate attendance and affect during periodic (weekly or monthly) encounters with supportive mental health professionals.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of

regular employment during a normal workday or work week."  20 C.F.R.

Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, No. 17 CIV.

6875 (LTS) (HBP), 2019 WL 2453343, at *13 (S.D.N.Y. Feb. 19, 2019)*,

report and recommendation adopted sub nom. Primo v. Comm'r of Soc.

Sec.,* No. 17 CV 6875-LTS-SLC, 2021 WL 1172248 (S.D.N.Y. Mar. 29,

2021)(noting that ALJs must recognize that "the effects of a mental health

issue may be different in a work setting than in a non-work setting"); *Flynn*

*v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)

(decision to discount opinion based on treatment notes indicating claimant

was "well-groomed and with calm affect" was "an assessment ... beyond

the scope of the ALJ's authority").

The primary question presented is the extent to which Plaintiff's

symptoms would be exacerbated if he was exposed to the demands of

competitive, remunerative work on a consistent basis.  The consistent

judgment of his treating psychotherapist and nurse practitioner was that

Plaintiff would decompensate and be unable to meet many of the mental

demands of basic work activity.  (T at 472, 475-78).  Thus, the ALJ erred by

discounting the treating mental health providers' shared assessment.  *See*

*Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 11 (2d Cir. 2020)("It would be

improper to rely on these mental status evaluations to conclude that Stacey

16

is capable of prolonged concentration while simultaneously ignoring the contrary conclusion of the very physicians who made the evaluations.").

Moreover, while the treatment notes document that Plaintiff often presented with a cooperative attitude and appropriate engagement at medical appointments, they likewise describe a person suffering from depression (T at 411, 637, 644, 717, 719, 728, 751, 759, 906); difficulty concentrating/thinking (T at 413, 421-423, 637, 644); disturbed sleep (T at 411, 644, 717); anxiety (T at 415, 421-423, 638, 644, 645-646, 717, 718, 719, 724, 728, 730, 736, 738, 741, 743, 751, 754-755, 906); panic attacks (T at 644); constricted/flat affect (T at 413, 421-423, 627, 724, 730); decreased energy (T at 637, 644); excessive worry (T at 411, 644, 717); psychomotor abnormalities (T at 413, 644, and 755); social withdrawal or isolation (T at 717, 724, 728, 730, and 743); decreased memory (T at 415, 717); and auditory hallucinations (T at 717, 718, 732, 735, 736, 739, 751-752, 755, 757, 759, 906). *See Stacey*, 799 F. Appx. at 10 (cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

Fourth, the ALJ placed undue emphasis on Plaintiff's ability to engage in a rather limited range of activities of daily living, which included laundry, grocery shopping, and caring for his father (who lived with Plaintiff until he passed away shortly before the administrative hearing). (T at 108, 235-38, 472, 731, 741).

It is well-settled that a claimant "need not be an invalid to be found disabled" and should not be punished for exerting the effort to attend to basic necessities of life. *See Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998).

Moreover, as discussed above, the treatment record documents significant symptoms persisting over time.  Plaintiff's ability to attend to basic activities in a relatively solitary environment does not translate into the ability to perform competitive work on a consistent basis. *See Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019); *Samaru v. Comm'r of Soc. Sec*., No. 18CV06321KAMLB, 2020 WL 3051576, at *10 (E.D.N.Y. June 8, 2020)("The critical differences between activities of daily living and activities in a full time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons …, and is not held to a minimum standard of performance, as she would be by

an employer.")(quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Lastly, and notably, the ALJ also did not find the opinions of the State Agency review physicians persuasive. (T at 111).

Under these circumstances, to the extent the ALJ believed the record was inconsistent with the marked impairments assessed by the treating sources, he should have considered further developing the record by re-contacting the treating sources to explain the apparent inconsistency and/or obtaining a consultative examination. *See Piscope v. Colvin*, 201 F. Supp. 3d 456, 464 (S.D.N.Y. 2016)("Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed light on the import of their opinions and the conflicts the ALJ identified."). The ALJ failed to do so, thus, requiring remand.

### B.    *Subjective Complaints*

A claimant's subjective complaints of limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v.*

*Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec*., 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's subjective complaints.

First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.  This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's subjective complaints, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are

legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

Here, Plaintiff testified as follows:

He last worked in 2017 as a groundskeeper (T at 39). He cannot work due to anxiety, particularly around people, and impaired concentration (T at 40, 43). He has panic attacks around people and when using public transportation. (T at 43-44). Plaintiff stutters, sweats, forgets things, and cannot concentrate around crowds. (T at 45). He has crying spells when he thinks about activities he once performed, which now produce debilitating anxiety. (T at 47).

At the time of the administrative hearing, Plaintiff was living alone in an apartment. (T at 36). He had been living with his father, who passed away shortly before the hearing. (T at 36). He shops in the morning because there are less people. (T at 46). He leaves his home 1-2 times per week and only when he must buy something or attend an appointment. (T at 47). He performs household chores slowly and with help from a cousin. (T at 49).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but

concluded that Plaintiff's statements as to the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record. (T at 109).

The ALJ's assessment of Plaintiff's subjective complaints is undermined by his errors in considering the treating providers' opinions, as discussed above.  Plaintiff's subjective complaints of limitation are supported by, and consistent with, the assessments of both of his long-term treating mental health providers.  The ALJ's failure to properly account for this significant support was error requiring reversal.

C.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).

Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the foregoing reasons, the Court recommends a remand for proper consideration of the treating source opinions and Plaintiff's subjective complaints.

In addition, it appears further development of the record may be necessary as Plaintiff's alleged onset date of July 1, 2017, pre-dates the treatment relationships he established with Ms. Feldman and Ms. Gustama in July of 2020.

The ALJ should consider re-contacting the treating sources for retrospective diagnoses and/or obtaining the assistance of an impartial medical expert for assistance in establishing the onset date. *See Gibson v. Astrue*, No. 07 Civ. 2845, 2009 WL 1181251, at *3 (S.D.N.Y. Apr.30, 2009)("'To determine a medically-reasonable disability onset date for the [P]laintiff, the ALJ on remand should call on the services of a medical advisor and [appropriate lay witnesses],' and, '[a] convincing rationale should be given for the disability onset date that is chosen.'") (citations omitted); *Parmenter v. Astrue*, No. 08-CV-1132, 2010 WL 2803418, at *1 (N.D.N.Y. July 15, 2010).

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's request for Judgment on the Pleadings should be GRANTED;

tthe Commissioner's request for Judgment on the Pleadings should be DENIED; and this case should be remanded for further proceedings pursuant to sentence four of section 405 (g) of the Social Security Act.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. *See also* Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the District Judge. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010).

Dated: April 29, 2025                    *s/Gary R. Jones*
                                                        GARY R. JONES
                                                        United States Magistrate Judge